IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST VENTURES, LLC,<br><br>       Plaintiff,<br><br>    vs.<br><br>KBA ASSETS AND ACQUISITIONS LLC, et al.,<br><br>       Defendants.<br>_____/ | Case No. 1:12-cv-01058 LJO SMS<br><br>ORDER GRANTING PLAINTIFF PRELIMINARY INJUNCTIVE RELIEF<br><br>(Doc. 9) |

    Plaintiff ST Ventures, LLC ("ST Ventures") seeks a preliminary injunction against Defendants KBA Assets and Acquisitions, LLC ("KBA"), Ben Penfield ("Penfield"), Asset Placement Limited, ("APL"), Susan Gillis ("Gillis"), Paul Windwood ("Windwood"), and Nominal Defendant Bank of America, N.A. ("Bank of America"). As of the date of this order, only KBA and Penfield have filed a response. For all the reasons set forth below, the Court GRANTS ST Ventures' request for preliminary injunctive relief.

**I.    BACKGROUND**

    **A.    ST Ventures' Allegations**

    ST Ventures owns a collateralized mortgage obligation, CUSIP #617453AA3, that has a face value of $1,000,000,000 ("the Bond"). The collateral for the Bond consists of commercial mortgage obligations of specific multifamily residences, retail space, office space, and other real property located in New York, Texas, California, Arizona, and other states. The Bond provides a coupon payment of approximately $10,000 per month.

In November 2010, Gillis, a partner at APL, contacted ST Ventures regarding an opportunity to sell the Bond. Gillis asserted that as a foreign company APL was able to engage in certain transactions that were not allowed in the United States. Specifically, APL could leverage the Bond as collateral for a high line of credit. The transaction entailed the following: ST Ventures would transfer the Bond into an account with a line of credit; the account would be controlled by APL until the buyer paid for the Bond in full; and title of the Bond would then pass to the buyer. Gillis maintained that the transaction was secure and carried little risk. Gillis also promised to replace the Bond if anything went wrong with the transaction.

In the spring of 2011, Windwood, the Director of Finance at APL, allegedly found a buyer for the Bond. The buyer, however, failed to pay for the Bond and the Bond was subsequently returned to ST Ventures. In August 2011, Windwood found a second buyer for the Bond, KBA. On August 9, 2011, KBA entered into an agreement with APL whereby KBA agreed to pay $5,000,000 to APL for transferring the Bond to a designated account at UBS. APL, in turn, agreed to purchase the Bond from ST Ventures for $3,000,000. ST Ventures was to receive the $3,000,000 in two phases: $1,000,000 was due within 5-7 days after UBS confirmed receipt of the Bond and the remaining $2,000,000 was due within 10 days of the first payment.

ST Ventures transferred the Bond to the designated account at UBS on August 9, 2011. But for over a month, ST Ventures received no payment for the Bond. On September 21, 2011, ST Ventures formally terminated its agreement with APL and demanded the Bond back. Gillis, in turn, contacted Penfield, an agent for KBA, and demanded that the Bond be returned. Penfield, however, claimed that KBA had paid APL for the Bond in full.

Based on the foregoing allegations, ST Ventures claims that KBA and Penfield are in wrongful possession of the Bond, are wrongfully retaining the income produced by the Bond's coupon payments, and are unlawfully attempting to sell the Bond. ST Ventures asserts several causes of action against KBA, Penfield, APL, Gillis, and Windwood, including: (1) fraud; (2) recovery of specific property; (3) conversion; (4) negligent misrepresentations; (5) breach of contract; (6) breach of contract as a third party beneficiary; (7) accounting; (8) unjust enrichment; and (9) money had and received. In terms of relief, ST Ventures seeks, among other things, the return of the Bond and its income.

### B. Procedural History

ST Ventures filed its complaint and initiated this action on June 27, 2012. On July 3, 2012, ST Ventures filed an ex parte application for a temporary restraining order pursuant to Federal Rule of Civil Procedure 65 requesting that the defendants be enjoined from transferring, selling, or encumbering the Bond. The Court granted ST Ventures' request for a temporary restraining order and ordered briefing on the issue of a preliminary injunction, the matter now before the Court. As of the date of this order, only KBA and Penfiled have responded; the other defendants have yet to appear.[1]

## II. LEGAL STANDARD

The issuance of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 is an extraordinary remedy that may only be awarded upon a clear showing that the moving party is entitled to such relief. Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To prevail, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent a preliminary injunction; (3) that the balance of the equities tips in the moving party's favor; and (4) that an injunction is in the public interest. Id. at 20. In the alternative, the Ninth Circuit has reiterated that preliminary injunctive relief is appropriate if the moving party shows that there are serious questions going to the merits of the case, the balance of hardships tips sharply in the moving party's favor, and the other Winter factors (i.e., irreparable harm and public interest) are satisfied. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

## III. DISCUSSION

### A. Merits

The Court focuses on ST Ventures' cause of action for conversion against KBA, Penfield, APL, Gillis, and Windwood. "[C]onversion occurs where the defendant wrongfully exercises dominion over the property of another." Bank of New York v. Fremont General Corp., 523 F.3d 902, 914 (9th Cir. 2008) (citations omitted). In California, the elements of a claim for conversion are: (1) the plaintiff's ownership or right to possession of specific property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. Tyrone Pacific Int'l,

---

[1] Consistent with Federal Rule of Civil Procedure 65(a)(1), the Court ordered ST Ventures to confirm that all of the defendants subject to the requested preliminary injunction were given notice of this matter. (Doc. 16.) In response, ST Ventures filed proof of service demonstrating that all of the defendants were provided notice. (Doc. 17.)

3

Inc. v. MV Eurychili, 658 F.2d 664, 666 (9th Cir. 1981); Greka Integrated, Inc. v. Lowrey, 133 Cal. App. 4th 1572, 1581 (Ct. App. 2005).

In this case, ST Ventures asserts that it is the rightful owner of the Bond.  ST Ventures further asserts that APL, Gillis, and Windwood fraudulently induced it to enter a contract ceding control of the Bond.  Specifically, ST Ventures alleges that APL and Gillis falsely represented that under the contract the Bond would remain in a designated account controlled by APL and that the Bond would not pass to the purchaser until the Bond was paid in full.  Finally, ST Ventures alleges that KBA and Penfield are now in control of the Bond despite not having paid for the Bond.  The defendants do not dispute any of these allegations at this time.  Accordingly, the Court concludes that ST Ventures has raised, at the very least, serious questions regarding the merits of this claim.

**B.  Irreparable Harm**

ST Ventures seeks a constructive trust over the Bond as a remedy.  "A constructive trust is an equitable remedy to compel a person who has property to which he is not justly entitled to transfer it to the person entitled thereto."  Weiss v. Marcus, 51 Cal. App. 3d 590, 600 (Ct. App. 1975).  The remedy is available in any case where there is a wrongful acquisition or detention of property to which another is entitled, including, as in this case, actions for fraud and conversion.  See id.; Burlesci v. Peterson, 68 Cal. App. 4th 1062, 1069 (Ct. App. 1998) (a claim for conversion may serve as the basis for imposing a constructive trust).

ST Ventures argues that in the absence of preliminary injunctive relief irreparable harm would result because it would lose the possibility of a constructive trust as a remedy.  ST Ventures asserts that participants in the CMO market have informed it that the Bond is being offered for sale.  In fact, ST Ventures asserts that at one point it hired an investigator to contact an individual claiming to offer the Bond for sale.  As such, ST Ventures fears that unless preliminary injunctive relief is granted the Bond will be sold to a bona fide purchaser, transferred outside the jurisdiction of this Court, and ST Ventures would left without the prospect of equitable relief.  Finally, ST Ventures argues that monetary damages would be an insufficient remedy because the Bond represents interests in unique real property, and as such, only the return of the Bond itself would make ST Ventures whole.

A district court has the power to issue a preliminary injunction to preserve the status quo and

protect the possibility of affording a party equitable relief.  <u>FTC v. H. N. Singer, Inc.</u>, 668 F.2d 1107, 1112 (9th Cir. 1982).  Here, the Court is persuaded that ST Ventures will likely be left without equitable relief in the absence of a preliminary injunction and as a result would be irreparably harmed.  <u>See</u>, <u>e.g.</u>, <u>Janvey v. Alguire</u>, 647 F.3d 585, 600 (5th Cir. 2011) (agreeing that irreparable harm exists where the defendants threatened to dissipate or transfer assets out of the jurisdiction, thereby impairing the court's ability to grant effective equitable relief); <u>Bryant v. Matvieshen</u>, Case No. 1:12-CV-00572 AWI SKO, 2012 U.S. Dist. 59317, at *11-12 (E.D. Cal. April 27, 2012) (finding a likelihood of irreparable harm where the plaintiffs sought equitable relief (the recovery of specific shares of stock) and the defendant threatened to disperse or transfer the shares in dispute).  The defendants have not offered any argument demonstrating otherwise.[2]

### C. Balance of the Equities and Public Interest

The remaining factors of the preliminary injunction analysis also lean in ST Ventures' favor.  First, the balance of the equities tips sharply in ST Ventures' favor.  In the face of ST Ventures' claim that it would suffer irreparable harm absent a preliminary injunction, the defendants fail to identify any harm or hardship they would suffer if such relief is afforded.  Second, although the dispute in this case relates to a purely private transaction, the public interest is promoted, at least in a general way, when alleged fraud or conversion is thwarted.

### D. Bond Requirement

Federal Rule of Civil Procedure 65(c) requires the moving party to post a bond "in an amount that the court considers proper" as security for any costs and damages that may be sustained by a party wrongfully enjoined.  Here, the defendants do not argue or submit any evidence demonstrating that they will suffer damages as a result of the preliminary injunction.  Therefore, the Court will not require ST Ventures to post a bond at this time.  <u>See</u> <u>Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills</u>, 321 F.3d 878, 882 (9th Cir. 2003) (district courts have wide discretion in setting the amount of the bond, and where the non-moving party does not offer any evidence of likely damages as a result of the injunction

---

[2] The Court notes that Penfield has filed a declaration stating that KBA has sold the Bond.  (<u>See</u> Doc. 12 at 7-8.)  However, Penfield offers little information regarding the purported sale, and most importantly, fails to indicate the identity of the purchaser.  As such, Penfield's declaration does not undermine ST Ventures' assertion that the current controller of the Bond can be traced through the Depository Trust and Clearing Corporation and from this ST Ventures is informed and believes that KBA is still in control of the Bond and is attempting to sell the Bond to a bona fide purchaser.

5

the amount may be set at zero).

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court:

1. GRANTS ST Ventures preliminary injunctive relief.

2. Until further ordered by the Court, the defendants and all persons acting in concert or participating with them are RESTRAINED and ENJOINED from directly or indirectly:

    a. Transferring, selling, disposing of, encumbering, altering, concealing, or removing from the jurisdiction of this Court the Bond (collateralized mortgage obligation CUSIP #617453AA3);

    b. Transferring, selling, disposing of, encumbering, altering, concealing, or removing from the jurisdiction of this Court the monthly coupon payments from the Bond; and

    c. Transferring, selling, disposing of, encumbering, altering, concealing, or removing from the jurisdiction of this Court any assets purchased with the monthly coupon payments from the Bond.

3. ST Ventures SHALL serve a copy of this order to all the defendants who have yet to appear in this action and file with the Court the relevant proofs of service.

IT IS SO ORDERED.

Dated:   **August 22, 2012**                              /s/ Lawrence J. O'Neill
                                                   UNITED STATES DISTRICT JUDGE