**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ST. VENTURES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>KBA ASSETS AND AQUISITIONS, LLC, et al.,<br><br>    Defendants. | CASE NO. 1:12-cv-01058-LJO-SMS<br><br>**ORDER ON MOTION TO DISMISS**<br>(Doc. 35) |

**STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

**INTRODUCTION**

On June 27, 2012, plaintiff St. Ventures, LLC ("St. Ventures") filed suit against defendants KBA Assets and Acquisitions, LLC ("KBA"), Ben Penfield ("Mr. Penfield"), Asset Placement Limited, ("APL"), Susan Gillis ("Ms. Gillis"), Paul Windwood ("Mr. Windwood"), and nominal

1

defendant Bank of America, N.A. ("Bank of America"). The gravamen of St. Ventures' complaint is that defendants obtained a bond owned by St. Ventures through fraudulent means. Now before the Court is APL's motion to dismiss St. Ventures' complaint for lack of personal jurisdiction, improper service, improper venue, and failure to state a claim. St. Ventures opposes the motion. For the reasons discussed below, this Court DENIES APL's motion.

## BACKGROUND

**I. Facts[1]**

St. Ventures owns a collateralized mortgage obligation[2] with an original face value of $1,000,000,000 ("bond"). The bond provides a coupon payment of approximately $10,000 per month. Nominal defendant Bank of America is the current trustee.

In November 2010, Ms. Gillis, on behalf of APL, contacted St. Ventures with a business proposition. Ms. Gillis explained that as a foreign company based in the United Kingdom APL was able to enter into a transaction not allowed in the United States. The transaction involved St. Ventures allowing a third party to use the bond as collateral on a line of credit for a period of time and in exchange the third party would pay a fee for use of the bond. Logistically, the bond would be put into a joint account, which APL would control, until the fee was paid. Then the bond would be transferred to the third party for an expressed period of time. Ms. Gillis assured St. Ventures that title to the bond would not change even after the bond was transferred. Ms. Gillis explained that the fee for use of the bond would be greater than the bond's current income stream. APL would find someone willing to pay for the limited use of the bond and then APL and St. Ventures would split the fee paid by the third party. Ms. Gillis repeatedly assured St. Ventures that the transaction was secure and carried little risk. Ms. Gillis further promised that she and APL would replace the bond if anything went wrong.

St. Ventures agreed to the transaction and APL allegedly located a third party willing to pay for the limited use of the bond. When the third party failed to pay the agreed upon fee, APL transferred the bond back to St. Ventures and indicated that it would look for another party. In July 2011, Mr. Windwood, APL's Director of Finance, located KBA and Mr. Penfield for the transaction.

---

[1] The background facts are derived from St. Ventures' complaint. This Court accepts the factual allegations in the complaint as true for purposes of this motion. *See Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).
[2] CUSIP # 617453AA3

2

On August 9, 2011, APL entered into an agreement with KBA in which KBA promised to pay APL $5,000,000 for use of the bond as collateral for a period of 13 months. Under the agreement $3,000,000 was to be paid to St. Ventures and the remaining $2,000,000 would be put into a private placement program with the proceeds to be split between KBA and APL. On August 15, 2011, St. Ventures and APL entered into an agreement in which APL promised to pay St. Ventures $3,000,000 in exchange for ownership of the bond. The parties agreed that St. Ventures could terminate the contract if APL failed to make the first payment on time and that upon such a request APL would return the bond to St. Ventures within 10 banking days.

In accordance with the agreement, St. Ventures transferred the bond but never received the promised payment. When St. Ventures questioned APL regarding payment, APL assured St. Ventures that the funds would be delivered as promised. On September 21, 2011, St. Ventures formally terminated its agreement with APL and demanded that the bond be returned. APL continued to give assurances and excuses but did not make any payments and did not return the bond. St. Ventures formally demanded return of the bond again on November 23, 2011, without success. St. Ventures also contacted Mr. Penfield directly. Mr. Penfield acknowledged receipt of the bond and claimed that KBA paid APL all that was due under their agreement. Ms. Gillis denied receiving funds from KBA or Mr. Penfield.

**II. Procedural History**

On June 27, 2012, St. Ventures filed a complaint with this Court in which it alleged twelve causes of action. (Doc. 1). St. Ventures alleges the following causes of action against KBA, Mr. Penfield, APL, Ms. Gillis, and Mr. Windwood: (1) fraud; (2) recovery of specific property; (3) conversion; (4) negligent representation; (5) accounting; (6) unjust enrichment; (7) money had and received; and (8) declaratory relief. In addition, it alleges a breach of contract claim and seeks relief based on rescission against APL, Ms. Gillis, and Mr. Windwood. St. Ventures also alleges a breach of contract and third party beneficiary claim against KBA and Mr. Penfield. Finally, St. Ventures seeks injunctive relief against all defendants.

On July 3, 2012, St. Ventures requested a preliminary injunction restraining and enjoining defendants from selling, transferring, liquidating, encumbering, spending, depleting, or otherwise

dissipating the bond and any portion of the coupon payments from the bond, or any assets purchased with these funds. (Doc. 9). On August 23, 2012, this Court granted St. Ventures' request. (Doc. 19).

Now before the Court is APL's motion to dismiss. (Doc. 35). APL seeks to dismiss this action for lack of personal jurisdiction, improper service, improper venue, and failure to state a claim. St. Ventures opposes the motion. (Doc. 41). APL filed its motion on March 15, 2013, and set the hearing on March 27, 2013, in violation of Local Rule 230(b) and this Court's Standing Order.[3] (*Id.*). On March 18, 2013, this Court found the motion suitable for a decision without oral argument, pursuant to Local Rule 230(g), and vacated the March 27, 2013, hearing date. (Doc. 38). The Court also set a briefing schedule and ordered APL to show cause as to why this Court should not impose sanctions for APL's failure to comply with the local rules and this Court's Standing Order. (*Id.*). In response, APL explained that its mistakes were unintentional and inadvertent. (Doc. 40). This Court discharges the order to show cause and admonishes APL to familiarize itself with this Court's Local Rules and Standing Order and to use care when filing documents with this Court.

**DISCUSSION**

**I. Personal Jurisdiction**

**A. Legal Standard**

FED. R. CIV. P. 12(b)(2) allows a defendant to challenge a complaint "for lack of jurisdiction over the person" as a threshold issue. A district court's determination regarding personal jurisdiction is a question of law. *Rio Prop., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Although defendant is the moving party on the motion to dismiss, plaintiff is the party who invoked the court's jurisdiction. Therefore, plaintiff bears the burden of proof on the necessary jurisdictional facts. *Id*.

When defendant's motion to dismiss is made as its initial response and the court decides the motion without conducting an evidentiary hearing, plaintiff need only make a prima facie showing that personal jurisdiction exists. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). A "prima facie" showing means that plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *See Harris Rutsky & Co. Ins. Serv., Inc. v. Bell &*

---

[3] This Court's Standing Order requires the parties to comply with Local Rule 230. Local Rule 230(b) requires a moving party to set a hearing date not less than twenty-eight (28) days after serving and filing its motion.

4

*Clements Ltd*., 328 F.3d 1122, 1129 (9th Cir. 2003).  The complaint's uncontroverted factual allegations must be accepted as true, and any factual conflicts in the parties' declarations must be resolved in plaintiff's favor.  *Id*.  To defeat plaintiff's prima facie showing of jurisdiction on a FED. R. CIV. P. 12(b)(2) motion, defendants must demonstrate the presence of other considerations that would render personal jurisdiction unreasonable.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

The Court considers both state and federal law in a personal jurisdiction challenge. California's long-arm statute authorizes the exercise of personal jurisdiction on any basis not inconsistent with the state or federal constitution. CAL. CIV. PROC. CODE § 410.10.  As to federal law, "[e]xercise of in personam jurisdiction over an out-of-state defendant is limited by the Due Process Clause of the Fourteenth Amendment." *Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163, 1168-69 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984)). Based on considerations of Due Process and California's long-arm statute, two recognized bases exist for personal jurisdiction over nonresident defendants: (1) "general jurisdiction" which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the person in all matters; and (2) "specific" or "limited" jurisdiction which arises out of the defendant's contacts with the forum giving rise to the subject of the litigation.  *Helicopteros Nacionales*, 466 U.S. at 414.  Absent a traditional basis for jurisdiction (presence, domicile or consent), due process requires that the defendant have "certain minimum contacts with (the forum state) such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

**B. Analysis**

APL contends that St. Ventures fails to establish specific jurisdiction because APL does not have sufficient minimum contacts with the state of California.

> The Ninth Circuit employs a three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction:
> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform

5

some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If plaintiff satisfies its burden then defendant must set forth "a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012).

**1. Purposeful Availment**

A defendant purposefully avails itself of the privilege of doing business in a forum state by creating a "substantial connection" to the forum by its own actions. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 379 F.3d 1120, 1124 (9th Cir. 2004). A showing of purposeful availment "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Washington Shoe Co.*, 704 F.3d at 672. However, the mere existence of a contract with a party in the forum state is not enough. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). It is the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing – that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

This Court finds that APL purposefully availed itself of the privilege of doing business in the State of California. APL reached out beyond the United Kingdom and located KBA, a Nevada business with its principal place of business in California,[4] and Mr. Penfield, a California resident, for

---

[4] St. Ventures requests the Court to take judicial notice of the fact that KBA is registered with the Secretary of the State of California at an address in Merced, California. (Doc. 41-3). St. Ventures further requests the Court to take judicial notice of a complaint filed by KBA in the District of Arizona, in which KBA states that it is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business in the State of California. (*Id*.). A court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Accordingly, this Court GRANTS St. Ventures' request for judicial notice.

the transaction. APL entered into a 13-month relationship with KBA and Mr. Penfield during which substantial amounts of money would be transferred between the two entities. Accordingly, the "quality and nature [of the relationship] can in no sense be viewed as random, fortuitous, or attenuated." *Burger King Corp.*, 471 U.S. at 480 (internal quotation marks omitted). APL purposefully availed itself of the privilege of doing business in the State of California.

**2. Forum Related Activities & St. Ventures' Claims**

"The second requirement for specific jurisdiction is that the contacts constituting purposeful availment must be the ones that give rise to the current suit." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). This requirement is measured "in terms of 'but for' causation." *Id*. This requirement is met here. But for APL's contract with KBA, St. Ventures would not have transferred the bond to KBA which allegedly allowed KBA to abscond with St.Ventures' bond. Accordingly, APL's forum related activities give rise to the current suit.

**3. Reasonableness of Jurisdiction**

The final requirement for specific jurisdiction is reasonableness, *i.e.*, jurisdiction must comport with fair play and substantial justice. *Bancroft*, 223 F.3d at 1088. Defendant has the burden of demonstrating unreasonableness and must do so by presenting a "compelling case." *Burger King Corp.*, 471 U.S. at 477. Courts consider several factors in determining reasonableness:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft*, 223 F.3d at 1088.

APL only addresses the first two reasonableness factors. It argues that its purposeful interjection into the forum state is minimal because it has no offices, employees, or licenses in California; does not solicit business or sell goods or services in California; does not have a phone listing, mailing address, real estate, or bank accounts in California; and does not pay taxes in California. This Court finds that the "purposeful interjection" factor is neutral. Although APL located

a California resident and a company with its principal place of business in California for the allegedly fraudulent transaction, other than this transaction there is no evidence that APL engaged in other transactions in the State of California.

With regard to the "burden in defending" factor, APL contends that it is an entity incorporated and headquartered in the United Kingdom. Thus, if it were required to defend this matter in the United States it would be prejudiced by the inability to present witnesses. Undoubtedly, it would be more burdensome for APL to litigate in the United States. However, a suit in the United States would not prevent APL from presenting witnesses. "Moreover, modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). In addition, APL is headquartered in an English speaking country. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002) (recognizing that defendants' ability to speak, read, and write in English mitigated the burden of defending a suit in the United States). On balance this factor weighs in favor of APL.

The extent of "conflict between the sovereignties" weighs in favor of St. Ventures. In weighing this factor, the Ninth Circuit focuses "on the presence or absence of connections to the United States in general, not just to the forum state." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). "Sovereignty concerns weigh more heavily when the defendants have no United States-based relationships." *Id*. Here, APL clearly has a presence in the United States. APL's Director of Finance, Mr. Windwood, resides in Branson County, Missouri. The third party located for the transaction, KBA, is a company based in the United States and the transaction involved United States' bank accounts.

The "forum state's interest in adjudicating the dispute" also weighs in favor of St. Ventures. St. Ventures alleges that Mr. Penfield and KBA have the fraudulently obtained bond. California has an interest in preventing its residents and entities doing business within its boundaries from engaging in fraudulent conduct. *See Epic Commc'n, Inc. v. Richwave Tech., Inc.*, 179 Cal. App. 4th 314, 336 (2009) (recognizing that California "retains an interest in securing a remedy for wrongs done here . . .").

The "efficient resolution" factor "turns primarily on the location of witnesses and evidence."

1  *Fiore v. Walden*, 688 F.3d 558, 584 (9th Cir. 2012).  This factor weighs in favor of St. Ventures.
2  Although APL's witnesses and evidence are likely located in the United Kingdom and Branson,
3  Missouri, the bulk of the evidence at issue is likely in California.  St. Ventures alleges that the bond is
4  in KBA's control and KBA's principal place of business is in California.

5        The "importance of the forum to the plaintiff's interest" factor is generally not given much
6  weight in this Circuit.  *Fiore*, 688 F.3d at 585.  Nonetheless, this factor weighs in St. Ventures' favor.
7  To begin with, there is no evidence that St. Ventures has any connection with the United Kingdom.  In
8  addition, it appears that the financial injury occurred in California because St. Ventures alleges that
9  KBA has the bond in California.  Finally, St. Ventures has a relationship with a California law firm.
10 Thus, California is a convenient and effective forum for St. Ventures.

11       Finally, "[w]hether another reasonable forum exists becomes an issue only when the forum
12 state is shown to be unreasonable."  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080
13 (9th Cir. 2011).  APL has failed to present a "compelling case" of unreasonableness.  *Burger King*
14 *Corp.*, 471 U.S. at 477.  Thus, this factor is not at issue.

15       After considering the reasonableness factors, this Court concludes that APL has not shown that
16 the exercise of jurisdiction in this case would be unreasonable.  Accordingly, this Court concludes that
17 APL is subject to specific personal jurisdiction in the State of California.  APL's motion to dismiss for
18 lack of personal jurisdiction is DENIED.

19 **II. Service of Process**

20       APL contends that it was served improperly.  It argues that service of the complaint on its
21 accountant at the address given was not sufficient under the Hague Convention or any other
22 internationally agreed means for accomplishing service because APL's accountant was not authorized
23 to accept service.

24       FED. R. CIV. P. 4(f)(1) authorizes service of process on an individual in a foreign country "by
25 any internationally agreed means of service that is reasonably calculated to give notice, such as those
26 authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."
27 "The Hague Service Convention is a multilateral treaty . . . intended to provide a simpler way to serve
28 process abroad."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988).  Both the

United States and the United Kingdom are participating countries.  *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.  Articles 2 through 6 of the Convention authorize service through a Central Authority of the State of destination.  *Id*.  Article 10 allows for service of process directly through "competent persons" of the State of destination provided the State of destination does not object.  *Id*.  In other words, Article 10 authorizes the use of process servers.  Article 10(c) specifically states:

> Provided the State of destination does not object, the present Convention shall not interfere with –
> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters art. 10(c), Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

   Here, it is clear that St. Ventures did not serve APL through the Central Authority.  The Affidavit of Service submitted by St. Ventures provides that service on APL was effectuated pursuant to Article 10 of the Hague Service Convention at 5 Luke Street, London, England, which is the registered address of APL.  (Docs. 1-2, 1-3, 26).  APL does not argue that the United Kingdom objects to direct service of process and at least one California court has concluded that a party can comply with the Convention by serving another in the United Kingdom through direct service.  *Balcom v. Hiller*, 46 Cal. App. 4th 1758, 1765 (1996).  Service was requested by St. Ventures' law firm, an entity clearly interested in the judicial proceeding.  It appears that service was effectuated by a "competent person[] of the State of destination" because the document was served by an individual over the age of twenty-one, who is not a party to the action, and who was hired by APS International, an organization that assists attorneys with international service of process.  The document was given to a receptionist at APL's registered address.  Thus, St. Ventures complied with the Convention.

   APL's argument that the receptionist at its accountant's office was not authorized to accept service is unpersuasive because service was effectuated at APL's registered address.  In addition, APL fails to provide any case law in support of its argument that a receptionist at its registered address is

not authorized to accept service. Further, in the venue portion of APL's brief it concedes that service "was made through its agent for service and its accountants." (Doc. 36, ¶ 81:17-18). Therefore, this Court finds that service was proper under Article 10 of the Hague Service Convention. Thus, APL's motion to dismiss on this ground is DENIED.

### III. Improper Venue

#### A. Legal Standard

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(3) is a challenge to the propriety of the plaintiff's choice of venue. FED. R. CIV. P. 12(b)(3). In federal actions, "whether resting on diversity or federal-question jurisdiction, venue is proper in the judicial district 'in which a substantial part of the events or omissions giving rise to the claim occurred.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2798 (2011) (quoting 28 U.S.C. § 1391(a)-(b)). "Section 1391(b)(2) does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate." *Rodriguez v. California Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000). All that a plaintiff needs to show is that a substantial part of the events giving rise to their claims occurred in this district. *Id*.

#### B. Analysis

APL argues that plaintiff's complaint should be dismissed for improper venue and that the forum selection clause in the parties' agreements should be enforced.

##### 1. Venue

Venue is proper in this district because a substantial part of the events giving rise to St. Ventures' claims occurred in this district. St. Ventures alleges that Mr. Penfield, a resident of Merced County, absconded with the bond. In addition, the fact that Mr. Penfield resides in Merced County and KBA has its principal place of business in this district, it can be reasonably inferred that Mr. Penfield signed the contract with APL in this district. Accordingly, it appears that the alleged fraudulent transaction occurred in this district and that the individual with control over the bond is in this district.

##### 2. Forum Selection Clause

With regard to the forum selection clause in the parties' contract, a forum selection clause is presumptively valid and "should not be set aside unless the party challenging enforcement of such a

provision can show it is unreasonable under the circumstances." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (1996).  The words of the clause will be given their "common or normal meaning . . . unless circumstances show that in a particular case a special meaning should be attached." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987).  Ambiguous language should be construed against the drafter of the contract. *Id*. at 78.  The Ninth Circuit distinguishes between

> "permissive" forum selection clauses, which establish venue or jurisdiction in a specified court but still permit venue elsewhere, and "mandatory" forum selection clauses which require actions to be brought only in the specified court.  For a clause to be mandatory . . . the clause must contain language that clearly designates a forum as the exclusive one.  Generally, when a clause only specifies jurisdiction in a particular court, the clause will not be enforced to bar venue elsewhere without some further language indicating the parties' intent to make jurisdiction exclusive.

*Omnicell, Inc. v. Medacist Solutions Group, LLC*, 272 F.R.D. 469, 473 (N.D. Cal. 2011) (internal quotation marks and citations omitted).

Here, the forum selection clause provides:

**LAW AND ARBITRATION**
The contract is subject to the Laws of the Republic of Ireland and England.  The parties accept that in the event of a dispute the findings of the mutually appointed adjudicator will be final.

(Doc. 1-2, ¶12).  Nothing in this clause suggests that the parties intended to make jurisdiction in the Republic of Ireland or England mandatory or exclusive.  *Cf. Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763-64 (9th Cir. 1989) (holding that the venue provision of the forum selection clause clearly designated an exclusive forum); *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1162-63 (E.D. Cal. 2003) (same).  In addition, the plain language of the clause shows that the parties did not agree to arbitration.  At best, the clause is ambiguous regarding arbitration.  Any ambiguity is to be construed against the drafter of the contract, which is APL. (Doc. 1-2).  Thus, this Court finds that the forum selection clause is permissive rather, than mandatory and that the plain language of the clause does not require arbitration.

APL's motion to dismiss St. Ventures' complaint for improper venue is DENIED.

**IV. Failure to State a Claim**

**A. Legal Standard**

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A FED. R. CIV. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a FED. R. CIV. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Serv. v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."

13

*Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B. Analysis**

APL's final argument is that St. Ventures' fraud claim should be dismissed for failure to state a claim.[5]

In alleging fraud, "a party must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) (internal quotation marks omitted). Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id*. (emphasis in original).

Here, St. Ventures' fraud claim satisfies the requirements of Rule 9(b). St. Ventures alleges that KBA, Mr. Penfield, APL, Ms. Gillis, and Mr. Windwood knowingly made misrepresentations to St. Ventures with intent to steal its bond. Specifically, St. Ventures alleges that during conversations that occurred from November 2010 to late summer of 2011, Ms. Gillis and Mr. Windwood, on behalf of APL, promised that the bond would remain in a joint account controlled by APL until the agreed

---

[5] The bulk of APL's argument regarding this issue is omitted from its opening brief due to a filing error, *i.e.*, in place of argument there is a document from another case. (Doc. 36, p. 24). However, because St. Ventures responds to APL's arguments, this Court will address them. This Court admonishes APL to be more careful when filing documents in the future.

funds were sent to St. Ventures in full.  (Doc. 1, ¶16, 19).  However, once St. Ventures transferred the funds, APL was no longer a joint account holder and only KBA had access to the funds. (Doc. 1, ¶25). During this same time period, as well as in the parties' August 15, 2011 agreement, Mr. Windwood and Ms. Gillis assured St. Ventures that it could terminate the contract should APL fail to make its payments and that upon request the bond would be returned within ten banking days. (Doc. 1, ¶19). However, when St. Ventures formally terminated the agreement in writing on September 21, 2011, and November 23, 2011, the bond was not returned.  (Doc. 1, ¶23). With regard to the misrepresentations made by Mr. Penfield on behalf of KBA, on August 9, 2011, Mr. Penfield promised to pay $5,000,000 to APL for use of the bond, of which $3,000,000 would be paid to St. Ventures. (Doc. 1, ¶20). However, APL denied ever receiving funds from Mr. Penfield. (Doc. 1, ¶24).

The above allegations identify the circumstances constituting the alleged fraud and enable defendants to prepare an adequate answer to the allegations.  Accordingly, St. Ventures' fraud allegations comply with FED. R. CIV. P. 9(b).  *See Neubronner*, 6 F.3d at 671-72.  Thus, APL's motion to dismiss St. Ventures' fraud claim for failure to state a claim is DENIED.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court DENIES APL's motion to dismiss and DISCHARGES the Order to Show Cause issued on March 18, 2013.

IT IS SO ORDERED.

Dated:   **April 23, 2013**                             /s/ Lawrence J. O'Neill
                                                  UNITED STATES DISTRICT JUDGE